**Frederick H. JACKSON, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 18344.**

United States Court of Appeals
District of Columbia Circuit.

Argued Sept. 24, 1964.

Decided June 4, 1965.

Danaher, Circuit Judge, dissented.

Mr. Robert T. Basseches (appointed by this court), Washington, D. C., for appellant.

Mr. Daniel J. McTague, Asst. U. S. Atty., with whom Messrs. David C. Acheson, U. S. Atty., and Frank Q. Nebeker and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

14. Pee v. United States, 107 U.S.App.D.C. 47, 51–52, 274 F.2d 556, 560–561 (1959).

15. See note 9, *supra*, cited, to text.

Before WASHINGTON, DANAHER and WRIGHT, Circuit Judges.

PER CURIAM:

This appeal is from a conviction of robbery. 22 D.C.Code § 2901 (1961). The complaining witness, the only witness to the alleged crime, testified that, while she was standing at a crowded bus stop, she felt her purse fall open. She turned immediately and saw appellant holding her billfold in his hand which was moving away from her open purse. On trial, appellant's counsel argued that, since no one saw appellant actually take it, possibly the billfold had fallen from the open purse and he was in the act of returning it, which he did.

Appellant contends on appeal that his conviction must be reversed because of an erroneous instruction on the essential element of intent. The only definition of intent given the jury was the following:

"I will now instruct you as to the law on intent. Regarding intent which the Court has already instructed you to be an element of the offense of robbery with which the defendant is charged, you are instructed that, of course, when you do a thing on purpose, you do that which you intend to do."

This instruction was clearly erroneous since commission of the crime of robbery requires the specific intent to deprive the victim of her property, not merely the general intent to take something "on purpose." Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952); Mills v. United States, 97 U.S.App.D.C. 131, 228 F.2d 645 (1955); United States v. Kemble, 3 Cir., 197 F.2d 316 (1952). Although no objection was made, it is clear that the charge left the jury misinformed on an essential element of the crime.[1]

The instruction on the other elements of the offense was somewhat confusing. The statute was read to the jury:

"Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery." 22 D.C. CODE § 2901.

And the indictment, which was in language similar to the language of the statute,[2] was read and sent to the jury room. The statutory language defines several patterns of behavior as robbery in a single convoluted sentence and does not clearly set forth the elements which the Government had to prove in this case. The reading of the indictment further confused the matter, since it replaced the disjunctives in the statute with conjunctives.[3]

Recently, we held that the defendant's right to have the jury pass on each element of the offense imposes a duty on the judge to give proper instructions on each element, even though no request is made by defense counsel. Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939 (1965). See Screws v.

---

1. The rest of the charge aggravated the misstatement of the law on intent. The instruction on identification contained a suggestion that the jury could convict without any finding on intent whatsoever:

"If you are convinced beyond a reasonable doubt then you may convict the defendant of this offense. If you find that the defendant did take this pocket book or this purse, and you are convinced beyond a reasonable doubt that the identification of the defendant, as the man who took it, then you may find the defendant guilty."

2. "The grand jury charges that on or about January 30, 1963 within the District of Columbia, Frederick Jackson by force and violence and against resistance, and by sudden and stealthy seizure and snatching, and by putting in fear, stole and took from the person, from the immediate actual possession of Selma J. Nootenboom, property of the value of about $12.95; consisting of one billfold of the value of $2.00 and $10.95 in money."

3. The prosecuting attorney requested the judge to clarify the ambiguities created by this difference in language, but his request was refused.

United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945). In Williams v. United States, 76 U.S.App.D.C. 299, 300, 131 F.2d 21, 22 (1942), a rape case in which the trial court failed to instruct on the elements cf the crime, this court stated:

> " * * * We have always been proud that under our law the elements which go to make up a crime are definitely established. To insist that a jury be told what rape is * * * is not to demand meaningless ritual. * * * "

Obviously, if the jury is to function effectively, it must be given a clear statement of each element which the Government must prove. The elements, as expressed in the statute, are hardly set forth with sufficient clarity to permit the jury to perform its duty intelligently. Compare Wheeler v. United States, 89 U.S.App.D.C. 143, 190 F.2d 663 (1951); People v. Pereles, 125 Cal.App.Supp. 787, 12 P.2d 1093 (1932).

■ The inadequacy of the instruction given in this case [4] requires a reversal of the conviction and a remand for a new trial. Rule 52(b), FED.R.CRIM. P.

■■ Appellant also argues that the indictment in which he was charged is so defective that his conviction must be reversed and the indictment dismissed. While we do not hold that the indictment would in itself require reversal, we note that it leaves much to be desired both in completeness and in clarity. The element of specific intent should be clearly stated. Furthermore, the indict-

ment should state the offense charged more precisely, rather than set forth the omnibus statutory provision under which the accused is charged. Compare Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861 (1932), with Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

Reversed and remanded.

DANAHER, Circuit Judge (dissenting):

Mr. Justice Holmes once pointed out that while criminal statutes are to be construed strictly, "They also are to be construed with common sense." [1] In that same spirit we should view the statute here, D.C.CODE § 22–2901 (1961),[2] and the indictment which had charged that Jackson by "*stealthy* seizure and *snatching* * * * *stole* and *took from the person*, the immediate actual possession of" the complaining witness, her billfold and her money. (Emphasis added.) In my view, all this case calls for by way of appellate review is the application of a bit of "common sense."

The evidence clearly disclosed not only that there had been a "stealthy" seizure and snatching but that the accused "stole" from the complainant the property in question.[3] In Neufield v. United States, 73 App.D.C. 174, 187, 118 F.2d 375, 388 (1941), cert. denied, Ruben v. United States, 315 U.S. 798, 62 S.Ct. 580, 86 L.Ed. 1199 (1942), we held that it is sufficient that "[t]he proof showed a taking from the immediate, actual possession" as had been charged in the indictment in *Neufield*, just as it was here. Moreover, this indictment had charged

---

4. See Scurry v. United States, 120 U.S. App.D.C. ——, 347 F.2d 468 (No. 18,633, decided April 15, 1965); Moore v. United States, 120 U.S.App.D.C. ——, 345 F.2d 97 (1965).

1. United States v. Alford, 274 U.S. 264, 267, 47 S.Ct. 597, 598, 71 L.Ed. 1040 (1927).

2. The section reads:
   "Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by put-

ting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than six months nor more than fifteen years."

3. This defendant could not possibly have been misled as to the offense with which he stood charged, United States v. Debrow, 346 U.S. 374, 377–378, 74 S.Ct. 113, 98 L.Ed. 92 (1953), and neither could the jury.

that Jackson "stole" the complainant's wallet. That very word imports the element of specific intent. "Probably every stealing is a conversion," the Supreme Court noted, adding, " 'To steal means to *take away from one* in lawful possession without right with the *intention to keep wrongfully.*' " [4]

If Jackson had testified as his counsel is said to have argued,[5] if there had been some evidence of a claimed "finding" of a dropped pocketbook which the "finder" was in the act of returning to its owner, if there had been evidence of any circumstances possibly to be construed as inconsistent with a stealing, we might have had a very different situation. No; there is nothing like that in this record, so let us see just what did happen.

The complaining witness left her employment at the Department of the Interior about 4:30 P.M. on January 30, 1963. The evidence next developed a typical pickpocket situation. The complainant was one of a large crowd waiting for a bus in the 700 block of Fourteenth Street. Jackson first stood in front of her, then moved aside, and as she stepped forward he stepped into line again. Thus he twice cut off her movement. Just as she was in front of the bus door, she felt her pocketbook fall open at her side. It had been hanging on her right arm. She looked down and discovered that her billfold was missing, she whirled around and saw Jackson with her billfold in his hand. He was placing the wallet into his coat pocket. That hand was about 12 inches from her pocketbook. The lady braced up to Jackson and said " 'I'll take that back, thank you.' " Jackson acted "stunned" at the sudden confrontation. Defense counsel on cross examination asked her:

"Q. What did he do?

"A. He hesitated, reached forward, and I reached forward and took it from him."

With unusual gumption, she followed the pickpocket and said:

"Does it make you feel good and important to take other people's purses?

"He said 'I don't know what you are talking about, lady.'

"I said 'We will see if a cop does' "

for a motorcycle policeman was going by. The complainant waved to the officer who pulled over to her. Jackson started running, the motorcycle policeman gave chase and the lady followed on foot. The culprit presently entered an alley, ran up a flight of stairs at the rear of a building and tried to open a door. The door was locked, and thus cornered, the culprit came down the steps and stood looking at a Cadillac car. The officer placed him under arrest for robbery and asked Jackson why he was looking at the Cadillac. "He said he was looking for his brother's car, which is a Corvette," the officer testified.

The defense submitted no advance requests for instructions. FED.R.CRIM.P. 30 provides that

"No party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

The judge instructed the jury, and no exceptions were taken to the charge as given. FED.R.CRIM.P. 52(a) provides

---

4. (Emphasis in the original.) Morissette v. United States, 342 U.S. 246, 271, 72 S.Ct. 240, 96 L.Ed. 288 (1952).

5. My colleagues say: "On trial, appellant's counsel argued that, since no one saw appellant actually take it, possibly the billfold had fallen from the open purse and he was in the act of returning it, which he did." Suffice it to say that this surprising reference to what defense counsel had argued may seem the more frivolous in that there was no evidence whatever—not even an iota—that anything of the sort had happened. Jackson did not take the stand.

"Any error * * * which does not affect substantial rights shall be disregarded." That Rule, stemming from section 269 of the Judicial Code, has as its purpose:

"[T]o substitute judgment for automatic application of rules; to preserve review as a check upon arbitrary action and essential unfairness in trials, but at the same time to make the process perform that function without giving men fairly convicted the multiplicity of loopholes which any highly rigid and minutely detailed scheme of errors, especially in relation to procedure, will engender and reflect in a printed record." [6]

The statute, predecessor of the Rule, reflected, said the Supreme Court, deep concern in the Congress as to the course which the courts had been taking:

"So great was the threat of reversal, in many jurisdictions, that criminal trial became a game for sowing reversible error in the record, only to have repeated the same matching of wits when a new trial had been thus obtained." [7]

Nowadays, astute counsel simply refrain from giving the trial judge a chance to supply some technical omission or to elaborate further in his instructions, despite Rule 30, *supra*. The "game" is then resumed in this court.

So, my colleagues would now reverse and order a new trial where this man had been fairly tried and where every one in the court room knew exactly what was at issue. The trial judge, as he said, called upon the jury to use "the same ordinary common sense and the ordinary intelligence which you would employ in determining any other important matter that you have occasion to decide in the course of your everyday life."

The judge read the statute applicable to a robbery situation. He instructed as to the Government's burden respecting the elements of the offense. He then pointed out:

"Also, an additional element of this crime of robbery which must be established beyond a reasonable doubt by the Government in order to justify conviction, is the element of intent. I will now instruct you as to the law on intent.

"Regarding intent which the Court has already instructed you to be an element of the offense of robbery with which the defendant is charged, you are instructed that, of course, when you do a thing on purpose, you do that which you intend to do.

"Now the intention that a person has in doing a certain act or performing a certain act, is to be gathered by his actions and by his words, and by his conduct. Of course, it is not possible for a man to read the secrets of the human mind and consequently in the trial of this case, in the administration of justice you, ladies and gentlemen of the jury, must seek the intention and gather by words and actions of the persons involved from the testimony in the case."

I believe the court's instruction was sufficiently explicit in the light of the evidence of record. I think a jury very properly might conclude—as here it did conclude—that Jackson was a pickpocket, he had opened the complainant's pocketbook, he had abstracted her wallet and was in the very act of putting it into his own coat pocket when she looked down and saw his hand only a foot from her pocketbook—and with her wallet in that hand. That he intended to convert the contents of that wallet to his own use is beyond peradventure. That he was *stealing* her wallet, taking it away from her without right and with the intention to keep it wrongfully, was overwhelmingly established. I suggest that none but

---

6. Thus explained Mr. Justice Rutledge in Kotteakos v. United States, 328 U.S. 750, 760, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

7. *Id.* at 759, 66 S.Ct. at 1245.

the naive could think otherwise. The jury might not have believed that Jackson was looking for his brother's Corvette as he stood alongside of the Cadillac in the dead-end alley. The "flavor" of the entire case beggars any suggestion of disparagement of the observation of the trial judge that "when you do a thing on purpose, you do that which you intend to do." I believe that.

I submit that the instructions should be read as a whole. Thus viewed, it seems to me beyond credit that substantial rights of this appellant had been denied. I think that even if it fairly could be said that the trial judge here had erred, the error should be regarded as harmless.[8]

Appellant's suggestion that the indictment was defective to me seems frivolous. Jackson knew that he stood accused of a "stealthy seizure." It was charged that he "stole" the lady's wallet. In Hagner v. United States, 285 U.S. 427, 432, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932), the Court noted that in "Grandi v. United States [6 Cir.] 262 Fed. 123, 124, the indictment charged the defendant" with possession of goods knowing they had been stolen but "failed to charge that the goods were in fact so stolen." A motion to quash was denied on the ground that the defendant could not have been misled to his prejudice. Justice Sutherland observed—with obvious approval—that the Court had said "The charge that defendant knew the goods to have been stolen naturally implies that the goods had been in fact stolen. The verdict should not be reversed on account of a defect *so obviously technical and unsubstantial.*" (Emphasis added.)

Here, "It is inconceivable to [me] how [Jackson] could possibly be misled * * *."[9] If Jackson seriously had sought further details, he could have pursued his request for a bill of particulars.[10] The fact is as the record shows that Jackson filed a motion for a bill of particulars on May 15, 1963 only to withdraw it two weeks later. Perhaps he decided that after all there was really only one issue, just as this court put it in another "pickpocket" case, Wigfall v. United States[11]:

"If the jury believed the testimony of the woman complainant, as they had a right to do, they might well have excluded every hypothesis save that of Wigfall's guilt as a factual inference from the proven facts."

I do not share the concern [12] of my colleages. I would affirm.

8. Cf. Johnson v. United States, 318 U.S. 189, 200, 201, 63 S.Ct. 549, 87 L.Ed. 704 (1943); in that case at 202, 63 S. Ct. at 555, Mr. Justice Frankfurter, concurring, said:
   "In reviewing criminal cases, it is particularly important for appellate courts to re-live the whole trial imaginatively and not to extract from episodes in isolation abstract questions of evidence and procedure. To turn a criminal appeal into a quest for error no more promotes the ends of justice than to acquiesce in low standards of criminal prosecution."
   I agree.

9. United States v. Debrow, *supra* note 3, 346 U.S. at 378, 74 S.Ct. at 115.

10. *Ibid.*

11. 97 U.S.App.D.C. 252, 254, 230 F.2d 220, 222 (1956).

12. Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), on its face has nothing to do with our problem. That prosecution brought under a special statute involved a charge of contempt of Congress under an indictment which had failed to allege the pertinency of the question to the subject under inquiry.