**Arthur BRUCE, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 20146.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 10, 1966.

Decided April 27, 1967.

---

See also D.C., 256 F.Supp. 28.

Mr. Joseph M. Snee, Washington, D.C., (appointed by this court), for appellant.

Mr. Theodore Wieseman, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., and Frank Q. Nebeker and Oscar Altshuler, Asst. U. S. Attys., were on the brief, for appellee. Mr. Edward T. Miller, Asst. U. S. Atty., also entered an appearance for appellee.

Before BAZELON, Chief Judge, TAMM and LEVENTHAL, Circuit Judges.

---

**LEVENTHAL, Circuit Judge:**

This case involves claims of erroneous advice of the counsel (hereafter "defense counsel") who represented appellant at the time of his guilty plea and sentence.

On February 24, 1965, appellant, with co-defendants Jackson and Brodie, was indicted for robbery. Appellant pleaded guilty on April 14, and on June 18, was sentenced by District Judge Sirica to serve two to eight years. On June 28, 1965, appellant signed a *pro se* motion to arrest judgment. He alleged that his trial counsel was inexperienced in criminal matters and that he was advised at the last moment to change his plea to guilty with the understanding he would be put on probation "even though he wasent [sic] guilty of said charge but only a victim of circumstances." Judge Sirica appointed new counsel, who filed a motion to vacate sentence under 28 U.S.C. § 2255 and to withdraw the guilty plea under Rule 32(d), F.R.Crim.P. Instead of the grounds urged by petitioner, this attorney advanced these: Petitioner is not guilty of robbery and his plea was not understandingly entered due to the fact that he was erroneously advised by defense counsel of the elements required to establish robbery. Further, defense counsel did not comply with petitioner's instruction, given prior to sentencing, to withdraw the guilty plea. After a hearing, which will be described shortly, the District Judge entered findings of fact and conclusions of law and denied the motions.

Leave to appeal without prepayment of costs was granted by this court en banc.[1] The attorney appointed by this court in effect contends that the denial of appellant's motions should be reversed because appellant's guilty plea, and failure to seek withdrawal prior to sentencing, were induced by erroneous advice of his counsel both (1) prior to the guilty plea, and (2) prior to sentence.

**I**

Before accepting the guilty pleas, Judge Sirica conducted an examination of the defendants. Jackson and Brodie, who were questioned prior to appellant, gave accounts of how the robbery took place that were similar in essentials. Both stated that the three had gotten together on the morning of the robbery and done some drinking. Jackson's version was that the three had first decided on a general plan to get some money with no particular source in mind and that they had later, when coming upon the High's store, decided to get the money there. Brodie made no mention of the earlier general plan, but said that they had all decided to rob the High's store just prior to entering it and that in carrying out the robbery, Jackson had wielded the gun, Brodie had taken the money and appellant had stood lookout.[2] They agreed that a robbery was committed in which a shot was fired, and that afterwards all three ran out and divided the loot equally.

When appellant was questioned, he first stated that he had had no intent to rob the High's store prior to entering, that he had entered only to get cigarettes. Under close questioning by the judge as to why he was pleading guilty in light of his version, appellant changed his account and admitted he had gone into the store knowing that a robbery was going to take place and intending to participate in it.

At the § 2255 hearing appellant did not testify, but called to the stand his defense counsel, who had once represented appellant in a civil matter and accepted this assignment without any assurances as to fee. Defense counsel testified as follows: Appellant told counsel he had been drinking with co-defendants, and "there had been some discussion, whether drunken or otherwise, about, Let's go get some money." However neither this particular store nor the manner of getting money was "on their schedule"

---

1. Order of April 22, 1966, vacating an order of denial entered by a divided panel.

2. Brodie said that "[appellant] was standing at the door, more or less a lookout, I guess."

and appellant went into the High's store merely to get cigarettes. After Jackson used the gun, they ran out and appellant panicked and ran with them to an apartment where they divided the money, and "he knew then that he had done wrong." He later turned himself over to the police.

Defense counsel said he discussed the facts with appellant "as clearly as I could, and he seemed hazy about the immediate recollections prior to entering High's." At first counsel, knowing appellant "as a decent human being," believed "every bit of his story," and recommended that he go to trial. Later however counsel learned of the pistol shot, not divulged at first by appellant. "And I didn't know that they had, if not this store, some other plans in mind of let us say a mischievous nature." As defense counsel put the pieces together, his opinion changed. He discussed this with appellant, and the feasibility of a plea and possibility of partial restitution.

Defense counsel believed that appellant's involvement was traceable to the drinking. When asked if he was aware of the doubt whether appellant was capable of the specific intent required for robbery, he said he did not approach it on that basis. "Given all the facts, and the fact that there was some mischief planned, if not here, in another place," and that the profits were split one-third, then even though appellant did not know Jackson had a gun, "it was my opinion, and I told him so, whether it is wrong or not is for the Court to determine, that he was as guilty as they were." He amplified that he recommended the guilty plea when appellant, whom he considered honest, "told me they were up to mischief." "If you are up to mischief with three people, and you know mischief is going to take place, and you are sober or maybe half high when you said it, and somewhere along the line, if one of them goes out, and you know it is going to take place some time, and you are not the leader to start with, * * * when that takes place you are as guilty as the other guy."

### A

Appellate counsel erects a structure of ineffective assistance of counsel resting on a foundation claim that appellant was given plainly erroneous advice by defense counsel, who considered that the crime of robbery had been established by appellant's presence when his companions decided to and did rob a store, and his sharing in the loot. Appellant's additional responses to the plea judge is explained substantially as follows—that it was because defendant was erroneously told by his counsel that he was guilty, that he answered "Yes" when the judge, after admonishing him to tell the truth and not to "dilly dally with this Court," asked him whether he knew before entering the High's store that a robbery was to take place there, and whether he had the intention of participating in that robbery. This background, argues counsel, shows that the guilty plea was not made "understandingly," i. e., understanding "the meaning of the charge, and what acts amount to being guilty of the charge,"[3] and that due to ineffective assistance of counsel appellant has never had his day in court.

We begin our analysis by putting aside for the time being the answers given by appellant at the plea proceeding. In earlier cases it was said that a claim based on counsel's incompetence cannot prevail unless the trial has been rendered a mockery and a farce. These words are not to be taken literally, but rather as a vivid description of the principle that the accused has a heavy burden in showing requisite unfairness.[4] Although the cases are rare and extraordinary, it appears that an accused may obtain relief under 28 U.S.C. § 2255 if he shows both that there has been gross incompetence of counsel and that this

3. Edwards v. United States, 103 U.S.App. D.C. 152, 155, 256 F.2d 707, 710, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed. 2d 82 (1958).

4. Mitchell v. United States, 104 U.S.App. D.C. 57, 259 F.2d 787, cert. denied, 358 U.S. 850, 79 S.Ct. 81, 3 L.Ed.2d 86 (1958).

has in effect blotted out the essence of a substantial defense either in the District Court[5] or on appeal.[6]

It would not be fruitful to attempt further delineation of the applicable standard by reference to generalities, except perhaps to say that a more powerful showing of inadequacy is necessary to sustain a collateral attack than to warrant an order for new trial either by the District Court[7] or by this court on direct appeal.[8]

Assuming for discussion that the requisite incompetence can be made out by showing an ignorance of critical doctrine discoverable with rudimentary preparation,[9] we are not persuaded that this is such a case. The advice of defense counsel was not formulated, and cannot fairly now be supported, as a tactical estimate of a "high probability of conviction."[10] But it is likewise plain that his advice that appellant's own statements showed him guilty was not based on the premise that he was guilty by virtue of mere presence and guilty knowledge, a premise that we have held unsound.[11] The advice of defense counsel focused on the existence of a general plan to get some money by doing "mischief."

The fair import of counsel's testimony was, in short, that he understood it was agreed to rob someone, somewhere. That is how we take his questioned advice, particularly in view of appellant's failure, notwithstanding his burden, to define "mischief" further through either cross-examination of defense counsel or appellant's own testimony. Appellate counsel does not argue differently. His point is, apparently, that robbery requires the intent to take property from a particular victim, not merely a general intent to rob that remains unfocused.[12]

Without saying whether or to what extent we agree with the decisions we now cite, we note that there is authority to support the proposition that when a person plans with others to rob someone, somewhere, his presence without protest at the scene of the crime undertaken by others is sufficient to constitute encouragement and sufficient

5. Jones v. Huff, 80 U.S.App.D.C. 254, 152 F.2d 14 (1945). Of course the court refuses to review or reassess by hindsight the judgment of defense counsel on questions of strategy, trial tactics or trial decisions. *See, e.g.*, Edwards v. United States, *supra*, note 3; Smith v. United States, 105 U.S.App.D.C. 115, 265 F.2d 99, cert. denied, 361 U.S. 843, 80 S.Ct. 95, 4 L.Ed.2d 81 (1959); Willis v. United States, 106 U.S.App.D.C. 211, 271 F.2d 477 (1959), cert. denied, 362 U.S. 964, 80 S.Ct. 881, 4 L.Ed.2d 879 (1960); Alexander v. United States, 290 F.2d 252 (5th Cir.), cert. denied, 368 U.S. 891, 82 S.Ct. 144, 7 L.Ed.2d 89 (1961); Frand v. United States, 301 F.2d 102 (10th Cir. 1962).

6. Dillane v. United States, 121 U.S.App. D.C. 354, 350 F.2d 732 (1965).

7. *E.g.*, United States v. Poe, 122 U.S.App. D.C. 163, 352 F.2d 639 (1965), aff'g 233 F.Supp. 173 (D.D.C.1964) (Wright, Circuit Judge, sitting by designation).

8. Dyer v. United States, 126 U.S.App.D.C. 3, 379 F.2d 89 (March 23, 1967).

9. See the careful discussions in Brubaker v. Dickson, 310 F.2d 30, 37–39 (9th Cir. 1962) (Browning, J.) and People v. Ibar-

ra 60 Cal.2d 460, 386 P.2d 487, 490–91, 34 Cal.Rptr. 863 (1963) (Traynor, J.).

10. *Compare* Smith v. United States, *supra* note 5, where we affirmed the District Court's denial of a defendant's motion to vacate sentence on grounds that his plea had been coerced. In the § 2255 hearing in that case counsel had testified that he had urged the defendant to plead guilty because the Government's case was strong, defendant had given him nothing out of which to make a defense, there was a high probability of conviction, and there was likelihood of stiffer sentence if the defendant went to trial with no defense and was convicted. In disposing of that appeal, we said: "The testimony [at the § 2255 hearing] may be viewed to support the thesis that counsel merely brought his professional judgment and experience to bear, as he was bound to do, in advising appellant (1) of the high probability of conviction, and (2) of the sentences some courts have imposed on pleas of guilty in such cases."

11. Cooper v. United States, 123 U.S.App. D.C. 83, 357 F.2d 274 (1966).

12. *Compare* Jackson v. United States, 121 U.S.App.D.C. 160, 348 F.2d 772 (1965).

participation for aiding and abetting.[13] Again, without taking a position on the merits, we note that appellant's robbery guilt may be established under the rule that one who enters into a conspiracy to commit an offense is guilty of any substantive offense committed by his co-conspirators that is in furtherance of and a reasonably foreseeable consequence of the conspiracy.[14]

■ It may be that appellant would have fared better if his counsel had been more experienced, knowledgeable or aggressive, had sought to question or limit rather than apply the full measure of doctrines of vicarious liability. But certainly the doctrines cited refute the claim that the advice of defense counsel establishes that he lacked the minimum standards of competence necessary to satisfy appellant's constitutional right to counsel.

### B

We now consider the question whether relief should be provided pursuant to Rule 32(d), F.R.Crim.P., on the ground that, regardless of the advice that was given by defense counsel, what appellant understood from counsel was that guilt was established by the mere fact that he was present and shared in the proceeds. That is indeed what appellant indicated when first questioned at the plea proceeding. When invited by Judge Sirica to make a statement as to his part in the offense to which he pleaded guilty, he said that he had gone to the store to buy cigarettes. When asked why he was pleading guilty, appellant replied "I was there * * * and I got some of the money." Judge Sirica specifically advised him that the facts did not make him guilty of robbery. The judge then asked appellant specifically as to his knowledge at the time he entered the store. There was an indefinite response followed by the admonition already noted —to tell the truth and not to "dilly dally with this Court." Appellant was asked again if at the time he went into the store he knew that a robbery was to be committed,[15] and he answered yes. Five times thereafter he was asked whether he went in to take part in the robbery and answered yes.

In considering whether to vacate the guilty plea, Judge Sirica addressed himself to the question of whether appellant's guilty plea was understandingly made, and properly took into account the responses by appellant to the questioning that Judge Sirica conducted as plea judge pursuant to the 1959 Resolution of the District Judges.[16] That Resolution was primarily established as a means of obviating spurious after-thoughts of the accused that his guilty plea was improperly induced by threats or promises. It also has important value in assuring that an accused whose conduct is not within the indictment does not slide into prison through the ineptitude of counsel. The Judge does not merely call on the accused to affirm that he understands the charge and voluntarily pleads guilty. The accused is asked to tell what happened, in his own words. If the facts related by the accused do not support the guilty plea, the Judge makes further inquiry. The case at bar is an illustration.

13. United States v. Garguilo, 310 F.2d 249, 253 (2d Cir. 1962) (Friendly, J.); G. WILLIAMS, CRIMINAL LAW, THE GENERAL PART 353, n. 3 (2d ed. 1961).

14. Pinkerton v. United States, 328 U.S. 640, 646–47, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The formation of a conspiracy to rob does not necessarily require agreement either as to the means of committing the robbery, or as to the particular person to be robbed. Frohwerk v. United States, 249 U.S. 204, 209, 39 S.Ct. 249, 63 L.Ed. 561 (1919) (Holmes, J.); Wil-

liamson v. United States, 207 U.S. 425, 449, 28 S.Ct. 163, 52 L.Ed. 278 (1908).

15. Earlier he said he heard someone say let's rob the store, but he didn't know who. "I was just talking and drinking." Later he said he didn't hear because it was raining and he was behind the others.

16. The text of the Resolution appears in note 3 of Everett v. United States, 119 U.S.App.D.C. 60, 61–62, 336 F.2d 979, 980–981 (1964).

The court's findings relating appellant's admissions are ample support for its conclusion, accompanying the orders under appeal, that appellant's guilty plea was voluntarily and understandingly entered.

The District Court entered a separate finding noting that appellant was present at the hearing on his motions but did not testify. We also think this significant, indeed well nigh decisive. Even if appellant erroneously understood from defense counsel that robbery was established by presence at the crime and division of the proceeds, the District Judge cleared that up. Appellant made further admissions that he knew there was to be a robbery and that he intended to participate therein.

Appellant does not claim these were admissions in any way "planted" on him by defense counsel.[17] Defense counsel testified, without contradiction, that he never asked appellant to make such a statement, and indeed he had never previously heard any such details from appellant, and did not know whether appellant honestly remembered them or had learned them from the statements of his co-defendants. Had appellant testified that he had no knowledge that a gun was to be used at High's and that there had only been a general plan of robbery (or "mischief"), then the District Judge would have had to consider whether guilt may be established on principle of vicarious liability.[18] Or the District Judge might have determined that this was one of the exceptional cases where the Court, after having personally addressed the defendant and being satisfied that the plea was made voluntarily and with understanding of the nature of the charge and the consequences of the plea, will accept a plea of guilty, even though defendant accompanies his plea with a statement that he is not guilty, on a determination that incriminatory evidence establishes such a high probability of conviction as to satisfy the requirement that there be a "factual basis for the plea" before judgment can be entered thereon.[19] Or the case might have

17. It has been raised as a problem of ethics whether an attorney may advise the defendant first that the evidence implicating him is so overwhelming that a guilty plea is his best salvation, and second that this plea will not be accepted unless defendant, departing from truth if need be, states facts that show he is guilty. Freedman, *Professional Responsibility of the Criminal Defense Lawyer: The Three Hardest Questions*, 64 Mich. L. Rev. 1469 (1966).

We have no hesitation in saying that an attorney, an officer of the court, may not counsel or practice such a deliberate deception.

On the other hand the 1959 Resolution does not prohibit either a defendant from pleading guilty, or the Court from accepting the plea, on the ground that the evidence implicating the defendant is so overwhelming that even though defendant believes himself to be innocent, he believes it is in his own best interest and hence in the interest of justice, that he throw himself on the mercy of the court rather than face the virtual certitude of a conviction after trial and the possibility of greater severity in a sentence imposed after trial. McCoy v. United States, 124

U.S.App.D.C. 177, 363 F.2d 306, 308 (1966).

18. See p. 118, *supra*, and footnotes 13 and 14.

19. The last sentence of Rule 11, F.R.Crim. P., effective July 1, 1966, provides: "The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea." No purpose to preclude a judgment on a guilty plea that is based on a probability of conviction (see McCoy v. United States, *supra* note 17; Smith v. United States, *supra* notes 5 and 10) is stated in the Note of the Advisory Committee on Rules, see 18 U.S.C.A. Crim.Rule 11 (Supp.1966). That this language is consistent with a probability-of-guilt standard, see American Bar Association Project on Minimum Standards For Criminal Justice: *Standards Relating to Pleas of Guilty* § 1.6 at 33 (Tentative Draft Feb. 1967). The committee's purpose was that the court itself be satisfied of the factual basis for the plea, rather than rely exclusively on defendant and his counsel. As the committee noted, this participation by the court avoids the possibility of a guilty plea from a defendant

been disposed of on a plea of nolo contendere.[20]

However, the incriminating admissions were made by appellant at the plea proceeding. If they can be subsequently ignored for some reason, more is required than a hypothesis of counsel that they may have reflected the reverberation of prior erroneous legal advice on a different though related issue, or an over-reaction to the Court's admonition, or a suggestibility to conform to the statements of his co-defendants. There may be truth in these thoughts without in any way indicating their legal significance if true. But the accused has a heavy burden on a post-conviction motion and the absence of forthright and credible testimony by the accused virtually dooms his cause.

## II

We now consider the events on sentencing day, June 18, related in the testimony of defense counsel. Appellant said he wanted to withdraw his guilty plea, that he thought he was not guilty of robbery and said "I just don't think I should get time for this, without having a trial." Counsel replied he would so advise the Court if appellant wanted, but did not know whether this would be successful in view of the answers at the plea. However, appellant asserted that he felt he had an appealable error—a view apparently gleaned from jail house lawyers, for defense counsel said he was never informed of what grounds would give him a reversal. Defense counsel then told appellant that he could request the Judge to withdraw the guilty plea, if he felt that was wrong. Or he could await sentence—since that might be moderate, although he had told appellant probation was out of the question in view of the use of a gun. This then ensued:

> He asked me, Could he appeal, and I had to answer, You can appeal practically anything now, but that was as far as we discussed appeal. * * * How could I say that he could not appeal? Of course, he can appeal. His remedies are available as you can see now.

---

who fails to realize that as a matter of law his conduct "does not actually fall within the charge."

The fear lest an innocent man be unjustly punished bids a court be chary before it accept a plea of guilty filed by one proclaiming he is not guilty. The administration of criminal justice is well served when those who are guilty in fact admit their guilt, and experience indicates that many of them, while preferring to deny or gloss over their involvement, at least at the outset, are ready to make the critical admission when they face the moment of truth before the judge, especially if they are aware that denial of guilt customarily entails rejection of a guilty plea.

Yet there is room for the conclusion that judgment on a plea of guilty is not contrary to justice if based on a high probability of the outcome of trial, even though neither a plea nor a verdict of guilty would conform to the defendant's subjective evaluation. Examples include not only the easy case where the accused relates facts that the judge identifies as a crime, but also the case where the question of guilt involves judgment rather than clear-cut facts (as in a crime of recklessness); the judge need not reach a definite conclusion of guilt if he is satisfied of a high probability of conviction.

The juridical question is more troublesome when guilt turns on a fact like the intention of an accused which the accused denies. Cf. Standards Relating to Pleas of Guilty, supra, § 1.6 at 34. Without intimating that judgment cannot be entered on a plea of guilty in such a case, it is suggested that it may harmonize better with prevailing juridical philosophy if a court desiring to approve a plea procedure for the defendant uses the plea of nolo contendere, see note 20.

20. The last sentence of Rule 11, F.R.Crim. P., is not applicable in case of judgment upon a plea of nolo contendere. The plea of nolo contendere, though rarely used, is still alive even for crimes involving moral turpitude. Lott v. United States, 367 U.S. 421, 81 S.Ct. 1563, 6 L.Ed.2d 940 (1961); Hudson v. United States, 272 U.S. 451, 47 S.Ct. 127, 71 L.Ed. 347 (1926). And see United States v. Bagliore, 182 F.Supp. 714 (E.D.N.Y. 1960), for discussion of the appropriateness of this plea for a case with mitigating elements that do not rise to the level of a legal defense.

If this excerpt is taken by itself, and on its face, it expresses advice that was clearly erroneous, for a § 2255 hearing, even if reviewed by an appellate court, is by no means the equivalent of an appeal. The advice completely omitted any reference to the important distinction concerning the grounds available for requesting withdrawal of guilty pleas, depending on whether requests are made before or after sentence.

We are unwilling, however, to pass upon the issue as focused by appellate counsel on this particular alleged inadequacy of defense counsel. The hearing was held on a motion that claimed defense counsel had failed to comply with appellant's instruction to present the withdrawal request. That allegation was not supported by the proof and has not been argued to this court. The motion was not amended to challenge the advice now being questioned in this court as a denial of appellant's rights. While amendments to conform to proof may be readily granted or inferred, in this case neither defense counsel nor the court were alerted that this was presented as an alternative basis of the motion. Had that been done additional evidence and perspective may well have been presented, and an effort made to ascertain more precisely exactly what defense counsel said and what he took into account, and not least important what the impact was on appellant and what prejudice if any resulted therefrom.

The question of prejudice is, indeed, an ultimate issue. Once before this court was confronted with substantially the same claim of erroneous advice that the accused would have a right of appeal, and it in effect turned the accused away with the observation that he had in fact been well served by his counsel and given as good legal service as the case permitted. Moore v. United States, 101 U. S.App.D.C. 412, 249 F.2d 504 (1957). In appellant's case defense counsel also rendered service. He spoke earnestly at the sentencing, in effect vouched for appellant as a friend, and noted that appellant had been a passive participant and had at no time been in possession of the gun. Judge Sirica stated at the time that heavier sentences would have been meted out if the case had gone to trial. Defense counsel had several sound reasons for urging appellant not to withdraw his plea. The context is therefore quite different from that of an "extraordinary inattention to a client's interests," which we have said could amount to ineffective assistance of counsel. Dillane v. United States, 121 U.S.App.D.C. 354, 355, 350 F.2d 732, 733 (1965).

But that services were rendered and that there is not the flavor of gross inattention to a client's interest does not necessarily dispose of the case. A claim of ineffective assistance of counsel might be made out if the wishes of the appellant were in fact diverted by clearly erroneous legal advice and he was substantially prejudiced thereby. Turning to the question of prejudice, we find the record barren of any substantial showing on this crucial point. Appellant made a bare assertion of innocence, but he has not come forward with any evidence that his admissions to Judge Sirica are not accurate.

It is conceivable that appellant was prejudiced because the mis-advice resulted in his failure to request withdrawal prior to sentencing. The Government argues there was no possible prejudice in the sense because appellant, it asserts, cannot meet even the more permissive standard applicable to a presentencing motion for withdrawal of a guilty plea. The contours of that standard are not easily defined.[21] But we will

21. *See* Kercheval v. United States, 274 U. S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927); Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252, 12 L.Ed.2d 290 (1964); Everett v. United States, 119 U. S.App.D.C. 60, 336 F.2d 979 (1964); Gearhart v. United States, 106 U.S.App. D.C. 270, 272 F.2d 499 (1959).

not pursue the point because it was not presented to or considered by the District Court. We only observe that the point is not foreclosed by the District Court's conclusion that appellant "failed to establish manifest injustice to support withdrawal of his guilty plea," for that is palpably a ruling that appellant failed to meet the standards applicable to a motion filed after sentence. Rule 32(d), F.R.Crim.P.[22]

■ Another possible source of prejudice derives from the fact that the sentencing transcript shows that Judge Sirica considered the use of the gun critically important in denying probation and meting out substantial sentences. According to the testimony of the § 2255 hearing, appellant had no knowledge of the gun prior to its use, but this was never brought out clearly at the sentencing proceeding.[23] Conceivably it was the erroneous advice of defense counsel that accounted for appellant's lack of allocution, and that in turn might have served as the vehicle for bringing out appellant's ignorance of the gun.[24]

This possibility of prejudice, although giving us concern, does not warrant reversal because it was not focused on in the District Court. It may be that Judge Sirica took into consideration at the sentencing hearing that appellant may have had no knowledge of the gun.

We have explored a number of matters in Part II of this opinion to make clear that our affirmance is not a rejection on its merits of the contention of appellate counsel discussed here. In some cases it may better serve the interest of justice to remand for consideration of points not presented to the District Court. In this case, taking into account appellant's failure to testify, and the possibility that this first offender may obtain relief on the parole application that we have been informed will be considered shortly by the D. C. Parole Board, we deem it best to confine our judgment to the motion as filed and ruled upon by the District Court. Our discussion makes clear, however, that our judgment is not intended to preclude consideration on the merits of a new § 2255 motion raising the kind of questions discussed in Part II.

Affirmed.

BAZELON, Chief Judge (dissenting in part):

I am in general agreement with the discussion in Part I of the court's opinion. My disagreement relates only to the court's refusal, in Part II, to grant any relief. I would remand this case to the District Court for reconsideration of appellant's motion to withdraw his guilty plea and to apply the principles which govern prior to the imposition of sentence.

Immediately before the sentencing proceedings, Bruce informed his attorney that he desired to withdraw his guilty plea. Counsel advised him that he could appeal after sentence was imposed[1]

---

22. The procedure for presenting such a point, if made, would presumably embrace two steps: (a) an application that the sentence as given be set aside because of the prejudice resulting from ineffective assistance of counsel; and (b) a request that the motion that would, except for counsel's mis-advice, have been filed in advance of sentence, be considered by the District Court by reference to the pre-sentencing standards (see note 21) and granted accordingly. In actual practice the application described in (a) would presumably not be granted unless the District Court were ready to grant the motion described in (b).

23. At the sentencing hearing defense counsel argued merely that appellant "at no time had the gun."

24. This point is, of course, not supported by any testimony of appellant. Nor was it set forth in any argument of counsel either at the District Court or on appeal.

1. At the hearing below, counsel testified: He asked me, Could he appeal, and I had to answer, You can appeal practi-

without mentioning that it is more difficult to withdraw a guilty plea after sentence than beforehand.[2] Bruce stood mute at the sentencing hearing.

My colleagues agree that counsel's advice was "clearly erroneous," and that "a claim of ineffective assistance of counsel might be made out if the wishes of the appellant were in fact diverted by clearly erroneous legal advice and he was substantially prejudiced thereby." They deny relief, however, because the issue presented to the trial judge at the hearing below was not based upon counsel's erroneous advice on this point, but rather upon appellant's claim that counsel failed to move to withdraw his guilty plea prior to sentencing, even though he requested him to do so. Consequently, they conclude, there is absent the additional evidence in the record that might indicate "more precisely exactly what defense counsel said and what he took into account, and not least important what the impact was on appellant and what prejudice if any resulted therefrom."

I find the present record sufficiently clear. The trial judge had no opportunity to consider whether, under the more lenient standard for withdrawing guilty pleas prior to sentence, Bruce should have been given a trial on the merits.

By denying relief altogether, my colleagues send this indigent prisoner down the hill only to start up all over again on a new *pro se* petition, even though he only seeks a trial, not a retrial.

It appears that appellant may soon be paroled, and thus that he may no longer desire further proceedings. But that should be his choice.

cally anything now, but that was as far as we discussed appeal * * *. How could I say that he could not appeal? Of course, he can appeal. His remedies are available as you can see now.

2. See Kercheval v. United States, 274 U.S. 220, 47 S.Ct. 582 (1927); Nagelberg v. United States, 377 U.S. 266, 84 S.Ct. 1252 (1964); Everett v. United States, 119 U.S.App.D.C. 60, 336 F.2d 979 (1964); Gearhart v. United States, 106 U.S.App. D.C. 270, 272 F.2d 499 (1959).