**Glenn F. THOMPSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 6805.**

District of Columbia Court of Appeals.

Argued May 3, 1973.

Decided July 20, 1973.

Douglas J. Behr, appointed by this court, with whom William W. Greenhalgh, Washington, D. C., also appointed by this court, was on the brief, for appellant.

Stuart M. Gerson, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry, Richard L. Beizer, and Michael J. Ryan, Asst. U. S. Attys., were on the brief, for appellee.

Before KELLY, NEBEKER and PAIR, Associate Judges.

PAIR, Associate Judge:

This appeal is from convictions for violation of the Uniform Narcotics Act [1] and possession of the implements of crime (PIC).[2] Urging reversal, appellant contends (1) that the trial court erred in refusing to consider and grant his oral pretrial motion to suppress, and (2) that he was denied effective assistance of counsel. We disagree and affirm.

The basic facts are undisputed. When the case came on for trial defense counsel [3] orally moved the court to consider a motion to suppress. The court inquired as to the reason, if any, for counsel's failure to file the motion in a timely fashion.[4] Counsel attempted to explain:

> MR. KAPINUS [Counsel for defendant]: Your Honor, may I proffer the assumption that I was suffering under— my impression was that marijuana was found by the police officer under the front seat of the car. I can't say exactly how I got that impression.
>
> .    .    .    .    .    .
>
> MR. KAPINUS: My impression was the marijuana was in a glassine bag and it was found under the front seat of the car. I learned today it had not been found under the front seat, but between the seat and the console of the car, in an area which at least in my experience is not in plain view.
>
> That being the case, possibly the officers conducted a search of the auto prior to finding the glassine bag, rather than finding it in plain view. I was under the impression it was in plain view up until this point.
>
> THE COURT: You are saying that it cannot be hidden if it is between the seat and the console?
>
> MR. KAPINUS: Yes, Your Honor, it is a console that runs between the bucket

---

1. D.C.Code 1967, § 33–402.

2. D.C.Code 1967, § 22–3601.

3. Appellant has new counsel on this appeal.

4. *See* Super.Ct.Crim.R. 47–1. *See also* Super.Ct.Crim.R. 12.(b)(3) and R. 41(g).

seats in a sport type car. We are dealing with a Mustang. There is a steering column between the two front seats. This glassine bag was found between the console and the front seat.

.  .  .  .  .  .

THE COURT: Go ahead.

MR. KAPINUS: I just want to point out I was focusing on another aspect of the case. As to the presence of the marijuana, it was stuck in my mind that it was found under the front seat. Possibly it was a matter of semantics. The fact is that to me it was considered to be a part of the front seat. I didn't go into more detail about it. Nevertheless it appears now it wasn't under the front seat. I was mistaken. . . .

THE COURT: I don't think I can hear the motion under those circumstances. We will have to go forward.

The court then heard testimony in substance as follows. On July 6, 1972, at approximately 7:00 p. m., Officers Ritter and Loggins of the Metropolitan Police Department's "Special Operations Division" observed, proceeding on T Street near 12th Street, N. W., a blue Mustang automobile in which were seated three persons. It appearing from the license plates that the vehicle had been rented, the officers stopped it in order to make a "spot check." The driver of the vehicle produced a rental agreement upon which appeared a name other than his own. Officer Loggins thereupon called the rental agency and was informed that the vehicle had been rented, that the rental period had expired 17 days prior to his call, and that the vehicle had probably been reported as stolen. At the request of the officers, the driver and his two passengers, including appellant who was seated in the left rear seat, proceeded to the precinct station "to get the matter straightened out."

When they arrived, the driver and the two passengers alighted from the vehicle and, with the officers, were walking toward the building entrance when a detective came out and told Officer Ritter that the Mustang was blocking the detective's automobile. As the others walked to the station house, Officer Ritter got into the Mustang to move it and immediately "noticed a bag between the seat and the console toward the rear of the seat." "It was a clear bag," and the officer observed inside what he believed to be marijuana.

Officer Ritter took possession of the bag and, joining Officer Loggins, inquired of the three persons who had occupied the vehicle respecting the marijuana found in the vehicle and, when none responded, they were placed under arrest for possession of marijuana. After advising the three men of their rights,[5] Officer Ritter took them to the cellblock where they were searched. Found upon the person of appellant were two syringes, a syringe plunger, two needles, and a cooker which was in the waistband of his underwear.

Shortly thereafter, Officer Ritter returned to the cellblock for the purpose of interrogating the driver of the vehicle; and appellant, who was in the next cell, addressed Officer Ritter, saying, "[Y]ou can let these guys go. I put the stuff there." Appellant later admitted to Officer Loggins that the marijuana was his.

Appellant's testimony was that on the day in question he asked the driver of the automobile for a ride home. On the way they stopped and picked up the third party and, shortly thereafter, were stopped by the police. When the driver could not produce the registration for the rental car, the three men proceeded with the officers to the police precinct station so that the question of ownership of the vehicle could be clarified.

5. Officer Loggins testified that he personally informed appellant and his two companions of their rights, reading Metropolitan Police Department Form PD–47.

There was further testimony by appellant respecting the discovery of the marijuana:

BY MR. KAPINUS:

. . . . . .

Q What happened when he came in with the pouch?

A When he came back with the pouch he said—"Look what I found." He said he found some reefer in the car. I asked the officer, the one with the glasses—

Q That was Officer Ritter—

A I asked Officer Ritter was there any hassle in us going to the police station as I was on my way home. He said, "No," that he was taking us there to get everything cleared up.

Q What happened after Officer Ritter brought the pouch in?

A He asked us who did it belong to, and nobody would say anything really.

. . . . . .

Q Did you have occasion to tell the police officer that the marijuana was yours?

A No, not at the beginning.

Q Did you at any time tell the police officer the marijuana was yours?

A Yes.

Q Why did you tell the police officer that the marijuana was yours?

A Well, it was my first time being arrested, and I was really jittery. I was nervous. The way the police officer was telling me from the beginning, that it was a routine thing and that everything would be all right. Then they put handcuffs on me and I was locked up. I just got a whole lot of attention—you know—and I really—you know, didn't know what to do, you know.

. . . . . .

Q Do you know whose marijuana that was?

A Yes.

Q Whose marijuana was it?

A It was the driver's.

Q How did you know it was the driver's?

A Because you know after—when he picked me up, you know—he asked me, you know—did I want a smoke.

. . .

Q Where did he put it?

A He put it underneath the seat, like you know, it is a Mustang, shift, you know, while, you know, he reached underneath the seat, like the back of the car, you can't get to it from the back. You know what I mean. Like if I was in the back you can't put anything underneath the seat. It is closed in. He put it underneath the seat.

Based on the foregoing, the trial court found appellant guilty as charged and placed him on supervised probation for one year. From our view of the record, we are satisfied that no reversible error was committed and that appellant was not denied effective assistance of counsel. Concededly, the motion to suppress was not timely filed, but counsel for appellant presented at trial no new grounds which would have supported the motion—even, if it had been timely filed.[6]

Thus the conclusion is compelled that if there was error in refusing to entertain the tardy motion to suppress, it was cured when the trial court permitted counsel *sub silentio* to develop the point respecting the validity of the seizure and that there was no valid Fourth Amendment argument that could have been made concerning the seizure of the marijuana. Since on this record a timely motion to suppress would have been denied, failure to raise the issue did not "in effect [blot] out the essence of a substantial defense". Terrell v. United

6. *See* Jenkins v. United States, D.C.App., 284 A.2d 460 (1971).

States, D.C.App., 294 A.2d 860, 864 (1972). What this court said in that case is equally appropriate here:

> Moreover, even assuming questionable judgment on the part of counsel, "[m]ere improvident strategy, bad tactics, mistake, carelessness or inexperience do not necessarily amount to ineffective assistance of counsel, unless taken as a whole the trial was a 'mockery of justice.'" [Quoting] Edwards v. United States, 103 U.S.App.D.C. 152, 153, 256 F.2d 707, 708 (1958). *See also* Bruce v. United States [126 U.S.App.D.C. 336, 340, 379 F.2d 113, 117 (1967)]; Diggs v. Welch, 80 U.S.App.D.C. 5, 148 F.2d 667 (1945); and Scott v. United States [D. C.App., 259 A.2d 353, 354 (1969), *petition for allowance of appeal denied,* 138 U.S.App.D.C. 339, 427 F.2d 609 (1970)]. It cannot be said that this trial descended to that level. *See* ABA Project on Standards for Criminal Justice, The Defense Function § 5.2(b) (Approved Draft, 1971).

Accordingly, the convictions appealed from should be, and are hereby,

Affirmed.