**UNITED STATES of America,
Appellee,**

v.

**Joel ACHTENBERG, Appellant.**

**No. 71–1392.**

United States Court of Appeals,
Eighth Circuit.

April 3, 1972.

Rehearing and Rehearing Denied
May 23, 1972.

---

6. See United States v. Briggs, 457 F.2d 908, 911, 912 (2 Cir. 1972).

Irving Achtenberg, Kansas City, Mo., Norman S. London, St. Louis, Mo., for appellant; Robert Popper, Kansas City, Mo., of counsel.

Edward S. Christenbury, Atty., Dept. of Justice, Washington, D. C., Daniel Bartlett, Jr., U. S. Atty., Jerry J. Murphy, Asst. U. S. Atty., Robert C. Mardian, Asst. Atty. Gen., Robert L. Keuch, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before VAN OOSTERHOUT and STEPHENSON, Circuit Judges, and REGISTER, Senior District Judge.[*]

VAN OOSTERHOUT, Circuit Judge.

Defendant Joel Achtenberg has taken this timely appeal from his conviction by a jury on an indictment charging violation of 18 U.S.C.A. § 2153(a) and the resulting sentence of fifteen years imprisonment imposed. The indictment charges:

"That on or about May 4–5, 1970, at which time there was in force and effect at all times a state of national emergency proclaimed by the President of the United States, at St. Louis County, in the State of Missouri, and within the Eastern District of Missouri,

JOEL ACHTENBERG

with reason to believe that his act might injure, interfere with and obstruct the United States in preparing for and carrying on defense activities, did willfully attempt to injure and destroy, by fire, war premises and war material as defined by Section 2151, Title 18, United States Code, to wit: the United States Army Reserve Officers Training Corps facility at Washington University, St. Louis County,

---

[*] Judge Register by reason of his death did not participate in the writing of the opinion or the final determination of this case but concurred in the result in conference.

Missouri, and articles contained therein, intended for the use of the United States in connection with defense activities.

"In violation of Section 2153(a), Title 18 United States Code."

Section 2153(a) reads:

"Whoever, when the United States is at war, or in times of national emergency as declared by the President or by the Congress, with intent to injure, interfere with, or obstruct the United States or any associate nation in preparing for or carrying on the war or defense activities, or, with reason to believe that his act may injure, interfere with, or obstruct the United States or any associate nation in preparing for or carrying on the war or defense activities, willfully injures, destroys, contaminates or infects, or attempts to so injure, destroy, contaminate or infect any war material, war premises, or war utilities, shall be fined not more than $10,000 or imprisoned not more than thirty years, or both."

This case arose out of a series of incidents occurring on the Washington University campus in St. Louis during the late evening of May 4, 1970, and the early morning of May 5, 1970. A confrontation of students by troops at Kent University on May 4, 1970, had resulted in the death of four students. Students assembled at the quadrangle on the Washington University campus to protest the Kent incident, the presence of ROTC on the campus and the conflict in Vietnam. Shortly before midnight the assembled crowd, including the defendant, proceeded to the area on the campus where the Air Force and Army ROTC buildings are located. Various destructive activities occurred, including setting fire to the Air Force ROTC building and the Army ROTC building. The charges against the defendant relate only to the Army ROTC building.

A crowd assembled at the ROTC building area which included demonstrators, spectators, faculty members and University policemen. More than one thousand people were present. Several of the demonstrators broke open the door to the Army ROTC building. Some demonstrators set fire in the building. University policeman Abernathy was the only witness to give testimony connecting the defendant with the fire setting. He made his observations from a point 115 feet from the building. He testified that there was a small bonfire about 85 feet from the building and about thirty feet distant from him and that he observed the defendant make two trips into the ROTC building carrying fire in his hands from the bonfire. He further testified that he saw flames arise in the building shortly after the defendant entered it and saw defendant come out of the building without the fire. The nature and quantity of burning material is not disclosed.

A number of other witnesses offered by the Government testified that they did not see defendant carry fire to the building but that they did see some other persons do so. Some of such witnesses were faculty members and University policemen and were in a position to observe persons carrying fire to the building.

Defendant appeared as a witness and admitted participating in the march and demonstration but denied that he carried fire to the building or that he commenced any fire in the building, or that he had entered the building. Evidence was received that an attempt had been made to burn part of the gun cage in the ROTC building and that a two-by-four partition board was charred, and that two fatigue uniforms were burned.

The Army ROTC building belongs to Washington University. It is not a government building. It was used principally for ROTC training. Certain supplies in the building were property of the United States. An inventory of such property received in evidence discloses that the building contained 47 M–1 and M–14 rifles, office supplies, equipment, helmets, tents, uniforms and other equipment.

Defendant as a basis for reversal asserts the court committed prejudicial errors in the following respects:

I. Overruling a motion to dismiss the indictment upon the ground that § 2153 (a) is vague and overbroad, and violates the First and Fifth Amendments.

II. Overruling timely motions for acquittal.

III. Denial of motions for discovery and additional discovery.

IV. Refusal of requested instructions and errors in instructions given.

V. Prejudicial statements by prosecutor not supported by evidence made in closing argument.

VI. Permitting improper cross-examination of defendant.

VII. Cumulative effect of asserted errors.

For reasons hereinafter stated, we reject defendant's contention that the statute under which he was indicted is unconstitutional and his attack upon the sufficiency of the evidence to support a conviction. We uphold defendant's claim that prejudicial errors were committed depriving him of a fair trial and entitling him to a new trial.

### I.

We are indebted to counsel for providing us with a legislative history of 18 U.S.C.A. §§ 2151, 2153 and 2155 at our request. A brief resume of the legislative history is in order. The basic Sabotage Act, now codified as § 2153(a), was passed during World War I in 1918. 40 Stat. 533. It was designed to apply only in time of war and to make acts detrimental to the war effort which are already proscribed by state law offenses under federal law. See H.R.Rep. 11, 65th Cong., 1st Sess. The statute was amended and expanded in 1940 by 54 Stat. 1220 to afford protection of national defense activities against sabotage at times United States was not at war. The main part of such amendment is codified in 18 U.S. C.A. § 2155. Section 2155 differs from §

2153 principally in that it omits the requirement of war or declaration of war emergency and that it provides a ten year maximum penalty rather than thirty years.

In 1953 Congress by 67 Stat. 133 amended § 2153 by adding the phrase "or defense activities" after the words "carrying on the war" wherever they appeared in § 2153 and by adding the phrase "or defense activities" at the end of the definition of war material wherever that appeared in § 2151. Also added was a provision now incorporated in § 2157 reading:

"The provisions of sections 2153 and 2154 of this title, as amended and extended by section 1(a) (29) of the Emergency Powers Continuation Act (66 Stat. 333), as further amended by Public Law 12, Eighty-third Congress, in addition to coming into full force and effect in time of war shall remain in full force and effect until six months after the termination of the national emergency proclaimed by the President on December 16, 1950 (Proc. 2912, 3 C.F.R., 1950 Supp., p. 71), or such earlier date as may be prescribed by concurrent resolution of the Congress, and acts which would give rise to legal consequences and penalties under any of these provisions when performed during a state of war shall give rise to the same legal consequences and penalties when they are performed during the period above provided for."

■■ The state of emergency proclaimed by the President on December 16, 1950, has not been terminated either by the President or by concurrent resolution of Congress. See Sardino v. Federal Reserve Bank of New York, 2 Cir., 361 F.2d 106, 109. In our view, the statute contemplates a termination of the emergency only by act of the President or by concurrent resolution of Congress. No Presidential proclamation or Congressional concurrent resolution has been enacted to terminate the emergency. Thus § 2153(a) is in effect and operative in the situation presented by this case.

Defendant in his attack on § 2153(a) as unconstitutional, vague and overbroad states:

"The vague terms are 'defense activities', 'reason to believe', 'national emergency', 'preparing for', 'war material' and 'war premises'. Both the terms themselves and the manner in which they are interlinked or applied in the statute, create the constitutional infirmity."

National defense materials are defined in § 2151. The definition clearly includes much of the government property such as guns and clothing stored in the ROTC building. National defense premises as defined in § 2151 include places where national defense material is stored. The scope of the national emergency and defense activities are covered by the statute, its legislative history and the President's proclamation. The statute and its legislative history show that Congress intended the coverage to be broad.

It may well be that the Act was not designed primarily to cover a situation such as here presented where minimal damage is imposed on the defense effort by the acts bringing the charge within possible coverage by the statute. There is no language in the statute which limits coverage to situations where the damage is severe. The statute proscribes attempts and hence would cover situations where an attempt was unsuccessful, and no damage at all resulted.

In United States v. Mechanic, 8 Cir., 454 F.2d 849 (1971), we stated:

"A statute may not forbid the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. Connally v. General Construction Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). It will be found void for vagueness and overbreadth if it fails to give a person of ordinary intelligence fair notice that his conduct is forbidden by the statute. Palmer v. City of Euclid, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971). We think

that § 232, read in conjunction with § 231(a) (3), is sufficiently clear that a normally intelligent person could ascertain its meaning and would be given fair notice of whether or not his conduct is forbidden under it."

We are satisfied that such test is met in our present case.

## II.

The court properly denied defendant's timely motions for acquittal. The evidence must of course be viewed in the light most favorable to the government as the prevailing party. The government has produced substantial evidence to support all essential elements of the offense. The most troublesome issue is whether the government has produced substantial evidence to support a finding that the defendant attempted to set fire to the ROTC building. Of the one thousand people present at the scene, only Captain Abernathy identified the defendant as a person who applied fire to the Army ROTC building. His testimony is substantially impeached by cross-examination. Captain Abernathy was positive in his testimony that the defendant set fire to the building. His testimony, if believed, is adequate to support a finding against the defendant on the fire setting issue. The issue of Abernathy's credibility is one for the jury to resolve. We cannot say as a matter of law that the evidence was insufficient to support the conviction. See United States v. Mechanic, supra.

## III.

Defendant made repeated requests for Grand Jury testimony and for evidence in FBI statements favorable to the defendant. The court sustained the request to the extent that the government was required to disclose testimony in its hands favorable to the defendant and otherwise overruled the discovery request. The United States Attorney took the position that the Grand Jury transcript and the FBI statements contained no information favorable to the defendant. Counsel disagreed as to what

constitutes favorable testimony. Defendant regarded testimony of witnesses present at the scene and in a position to observe who did not see defendant carry fire favorable, while the United States Attorney regarded such testimony as negative testimony. Ultimately the United States Attorney produced excerpts of the Grand Jury testimony and FBI statements of some witnesses who did not identify defendant.

Defendant renewed the motion for full disclosure on the basis that they were not able to evaluate the testimony without a complete record of it. The United States Attorney had a complete transcript of the Grand Jury testimony. Transcripts of government witnesses were presented to the witnesses for examination before they testified. The court refused to make the Grand Jury testimony of defense witnesses available to defendant but an offer of the United States Attorney permitted defendant's witnesses to review their testimony in the court's chambers in the presence of the court but in the absence of counsel.

Additionally, defendant asserted a particular need for the Grand Jury testimony by reason of the fact that two previous indictments returned by the Grand Jury against the defendant were dismissed prior to the return of the indictment upon which he was tried. A need to examine the testimony of the government's witnesses for impeachment purposes was asserted. Defendant contended that Abernathy had identified as a participant in setting the fire a person whom it was later established was in jail at the time of the incident.

A need for discovery because of the numerous potential witnesses and the fact that the student witnesses had scattered after the school year were asserted. Defendant's contention was that the government had superior ability through the FBI to contact possible witnesses and that the time and expense of defendant in obtaining interviews with the many prospective witnesses would be prohibitive.

We believe that the defendant has shown a particularized need for more of the Grand Jury testimony than was provided him under the liberalized standards set forth in Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, and National Dairy Products Corp. v. United States, 8 Cir., 384 F.2d 457. As stated in Dennis:

> "In our adversary system for determining guilt or innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact. Exceptions to this are justifiable only by the clearest and most compelling considerations." 384 U.S. 855, 873, 86 S.Ct. 1840, 1851.

Defendant requested an in camera inspection of the Grand Jury testimony by the court. If the disclosure of any of the Grand Jury testimony would adversely affect the public interest, such portion could be withheld by the court in connection with the in camera request.

## IV.

Defendant submitted numerous requests for instructions which were denied and also excepted to many of the instructions given. The court in its instructions sets out the indictment, quotes § 2153(a), and the definition of war material and war premises contained in § 2151, and then goes on to say:

> "Two essential elements are required to be proved in order to establish the offense charged in the indictment:
>
> "First, the act or acts of attempting to injure, destroy, contaminate or infect any war material, war premises, or war utilities, when the United States is at war or in times of national emergency as declared by the President or by Congress;
>
> "Second, doing such act or acts willfully and with intent to injure, interfere with or obstruct the United States or any associate nation in preparing for or carrying on the war or defense activities, or with reason to

believe that his act may injure, interfere with or obstruct the United States or any associate nation in preparing for or carrying on the war or defense activities.

"It is the position of the Government in this case that on or about May 4–5, 1970, during a time of national emergency proclaimed by the President of the United States, the Defendant, Joel Achtenberg, and others, did willfully attempt to injure and destroy, by fire, war premises or war material, as defined by Section 2151, Title 18, United States Code, to-wit: The United States Army Reserve Officers Training Corps facility at Washington University, St. Louis County, Missouri, and articles contained therein. It is the position of Defendant that although he was present with many other individuals in the vicinity of the Air Force and Army ROTC Buildings during the early morning hours of May 5, 1970, that he in no way did attempt to destroy the Army ROTC Building and war materials contained therein by fire and participated in no acts designed to destroy the Army ROTC Building and war materials therein by fire.

"The evidence in this case raises the question of whether the Defendant was, in fact, the criminal actor and necessitates your resolving any conflict or uncertainty in testimony on that issue.

"The burden of proof is on the prosecution with reference to every element on the crime charged, and this burden includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime charged in the indictment."

The above in substance constitutes the court's instructions on the offense charged, the elements thereof and the explanation of the elements. Defendant contends that there are eight essential elements of the offense, to wit:

"(1) A national emergency declared by the president, (2) Defendant had reason to believe that his alleged act would injure, interfere with and obstruct the United States in preparing for and carrying on defense activities, (3) Alleged act was wilful, (4) Defendant attempted to injure and destroy the Army ROTC building and articles therein, (5) Attempt by fire, (6) Building was 'war premises' under the statutory definition, (7) The articles were 'war materials' under the statutory definition, and (8) The articles were intended for use in connection with defense activities."

Defendant urges that he is entitled to have such elements set out and explained to the jury and to have the jury clearly informed that he is entitled to an acquittal unless the government has proved beyond a reasonable doubt each essential element.

■ We believe the court committed error in classifying the crime as consisting of only two elements and in not adequately explaining such elements to the jury and advising them of the burden of the government to prove each element beyond a reasonable doubt. See Johnson v. Bennett, 8 Cir., 386 F.2d 677, 682; United States v. Harris, 4 Cir., 346 F.2d 182, 184; Jackson v. United States, 121 U.S.App.D.C. 160, 348 F.2d 772, 774. As stated in *Jackson*:

"Obviously, if the jury is to function effectively, it must be given a clear statement of each element which the Government must prove. The elements, as expressed in the statute, are hardly set forth with sufficient clarity to permit the jury to perform its duty intelligently. . . ." 348 F.2d 772, 774.

We find no cases construing the Act under attack. Gorin v. United States, 9 Cir., 111 F.2d 712, aff'd, 312 U.S. 19, 61 S.Ct. 429, 85 L.Ed. 488, discusses the interpretation of the somewhat related Espionage Act and sets out and discusses appropriate instructions on the meaning of national defense and other ele-

ments of the espionage offense. No comparable instructions were given in the present case.

The position instruction contained in the instructions hereinabove quoted also omits essential elements of the offense. It also contains the words "and others" following the defendant's name and could mislead the jury into believing that the defendant would be responsible for acts of others when in fact no conspiracy or joint responsibility has been charged.

■ From the court's statement of the defendant's defense, the jury could well infer that the defense rested solely on defendant's claim that he had not attempted to set the fire. In no place is it adequately stated that the government must prove the allegations of its indictment that the defendant set the fire with reason to believe that his act might injure or interfere with and obstruct the United States in preparing for or carrying on defense activities. Whether such allegation, which is an essential element of the offense, is established is a fact issue which the government is required to prove and the jury should have been so advised. See Gorin v. United States, 312 U.S. 19, 32, 61 S.Ct. 429, 85 L.Ed. 488.

■ Section 2153(a) provides as an element of the offense the alternate of "with intent to injure . . . war or defense activities" or "with reason to believe that his act may injure . . . war or defense activities." The indictment charges the alternate "with reason to believe." There is a difference between intent and reason to believe. United States v. Drummond, 2 Cir., 354 F.2d 132, 152. The "intent to injure" instruction should not have been given.

Other attacks are made upon the instructions but we deem it unnecessary to prolong this opinion to discuss them.

### V.

■ Defendant urges prejudicial error in four statements made by the pros-

ecutor in his closing argument.[1] We shall refer to but two of such statements. The prosecuting attorney stated, "Three witnesses testified that the defendant waved to the crowd, 'Come on, guys, let's go, let's destroy the building.' Jerry Koester, Trudy Spigel and this morning—." Mr. Achtenberg objected, stating, "If the court please, I do not recall any evidence that anyone said, 'Let's destroy the building.'" The court ruled, "Ladies and Gentlemen of the Jury, as the Court has previously instructed you, the opening statement of counsel and the closing statements of counsel are not evidence. The Jury heard the evidence and they will be guided by what was or was not said from the witness stand." At a later point the prosecutor, in response to the argument of defendant's counsel that the evidence disclosed only two burned fatigue clothes and a burned piece of wood, stated: "Also mentioned that this was all the damage that was in the building, that we brought it all in. Well, that isn't necessarily correct; there is other damage. It had been shown to the Defense. There is another piece of wood back there; there's some photographs of burnt stars on the desk. But that's really neither here no there." The court disposed of this in substance by advising the jury that they alone are judges of what the evidence is.

There is no record support for the statement, "let's destroy the building." The statement appears to be a deliberate misstatement on the part of the prosecutor who by reason of his familiarity with the case doubtless was completely aware of the scope of the testimony he referred to. The jury, after hearing testimony for a number of days, may well have difficulty in recalling precisely what a witness said and be influenced by the prosecutor's representation. The statement is critical because of the weakness of the Government's case on the issue of defendant starting the fire.

1. The government in brief concedes such statements "may have better passed un- said" but urges that the error was not prejudicial.

The second statement is an effort on the part of the prosecutor by his statement to enlarge the damage established by the evidence. It is clearly improper for the prosecutor to testify.

The court's treatment of the prejudicial statements did not cure the error. See Robinson v. United States, 8 Cir., 32 F.2d 505, 510; United States v. Guajardo-Melendez, 7 Cir., 401 F.2d 35; Dunn v. United States, 5 Cir., 307 F.2d 883, 886.

We believe the other two statements challenged to be improper but consider them less prejudicial than those discussed.

### VI.

A close issue is presented on defendant's improper cross-examination issue. We are of the opinion that any error committed in the respect urged is not prejudicial and hence we omit discussion of the issue.

### VII.

 We believe that each of the errors discussed at point III, IV, and V are prejudicial errors which deprived defendant of a fair trial and which require a new trial. We are convinced that the cumulative effect of the errors is such as to make a reversal and new trial mandatory. We have held that the strength of the Government's case is an important factor to be considered on the prejudicial error issue. In Homan v. United States, 8 Cir., 279 F.2d 767, 771, we stated:

"Errors of the trial court which may be prejudicial in a close criminal case, in the sense of being capable in such a situation of possibly affecting the result, can well be without any such rational possibility in a strong case, and thus not entitle the defendant to a reversal of his conviction. The reviewing court must, of course, be able to say with fair assurance that the errors complained of could not, with natural operation in the total setting and proceedings had, be regarded as having possessed any influencing effect. Blackwell v. United States, 8 Cir., 244 F.2d 423, 431. 'If, [however], when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand, except perhaps where the departure is from a constitutional norm or a specific command of Congress' (presumably as a question of substantive or procedural due process). Kotteakos v. United States, 328 U.S. 750, 764–765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557.'"

We have previously pointed out that proof of defendant's attempt to burn the Army ROTC building is extremely weak and that it is dependent upon the credibility of a single witness whose credibility is challenged. Reliable persons present at the scene and in a position to observe testified that they did not see the defendant carrying fire to the building. If defendant actually made two trips of 85 feet to the building carrying fire, adequate opportunity to observe him was afforded. Abernathy's testimony with respect to starting a fire in the building consists of the following:

"Q. What, if anything, did you observe Joel Achtenberg do at that time, sir? A. Observed him with some lighted material in his right hand going to the doorway right at this Gun Shed, go into this building. [Indicating].

"Q. And then what did you observe, sir? A. After a short period of time I observed him from this area and seeing the light through the window on this south wall of the building, observed the flicker of the light towards an upper area or wall inside the building. I saw the light of the illumination go out and I saw Joel Achtenberg leave the building and come back to this area here. [Indicating].

\* \* \* \* \* \*

"Q. Now, after you observed him come out of this building without the

flames in his hand did you observe him then, sir? A. Yes, sir.

"Q. What, if anything, did you observe him do at that time? A. I observed him hurriedly come to a location where there was a small bonfire right here and pick up another piece of flaming material and rush back into the building. [Indicating].

\* \* \* \* \* \*

"Q. And what, if anything, did you observe him do then, sir? A. Observed him leave this area, rush back into the area of the Gun Shed, go into the door. Again, I could see the illumination of the material. That was formerly a darkened building. The illumination of what he had taken in there caused a blaze or a blaze to become ignited in that area there. [indicating] And at that particular time it was just gaining more illumination or a greater blaze and then he come running out laughing."

Assuming Abernathy saw what he said he saw, there is a minimal basis for inference that the illumination resulted from an act of the defendant rather than that of others whom the evidence establishes had lit fires in the building. Miss Milton, a student who testified that she was in the building much of the time while the fire setting was taking place, testified as to the fire setting activities of others and stated that Achtenberg was not in the building while she was there. She saw a person, not Achtenberg, throw some burning material over the partition in the gun shed area and that a board on the partition was still burning when she left. She had participated in extinguishing other fires that had been started.

When the *Kotteakos* test of prejudicial error is applied to the facts in this case, we cannot say that the errors committed did not substantially influence the verdict of the jury.

Reversed and remanded for a new trial.