**UNITED STATES of America,**
**Appellee,**

v.

**Joseph William EISENBERG, Appellant.**

**No. 71–1712.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1972.

Decided Nov. 9, 1972.

Rehearing and Rehearing En Banc
Denied Dec. 8, 1972.

**158**

Irl B. Baris, St. Louis, Mo., for appellant.

Edward S. Christenbury, Atty., Dept. of Justice, Washington, D. C., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, MEHAFFY, Circuit Judge, and DENNEY, District Judge.*

DENNEY, District Judge.

This case comes before the Court on timely appeal by Joseph William Eisenberg of his conviction of a violation of 18 U.S.C.A. § 2153(a).

Eisenberg's conviction was one of several which arose out of certain incidents which occurred on the Washington University Campus in St. Louis County, Missouri, during the late evening of May 4, 1970, and the early morning of May 5, 1970. On those dates, students and others protested the Kent State University deaths and the war in southeast Asia by demonstrating in the general area where the ROTC buildings were located. During the demonstration, materials and equipment from the Air Force and Army ROTC buildings were removed and both buildings were partially burned. Eisenberg was present during certain of those activities and was indicted as follows:

The Grand Jury charges:

That on or about May 4–5, 1970, at which time there was in force and effect at all times a state of national emergency proclaimed by the President of the United States, at St. Louis County, in the State of Missouri, and within the Eastern District of Missouri,

JOSEPH W. EISENBERG

with reason to believe that his act might injure, interfere with and obstruct the United States in preparing for and carrying on defense activities, did wilfully attempt to injure and destroy, by fire, war premises and war material, as defined by Section 2151, Title 18, United States Code, to wit: the United States Air Force Reserve Officers Training Corps facility at Washington University, St. Louis County, Missouri, and articles contained therein, intended for the use of the United States in connection with defense activities.

In violation of section 2153(a), Title 18, United States Code.

—SECOND COUNT—

The Grand Jury further charges:

That on or about May 4–5, 1970, at which time there was in force and effect at all times a state of national emergency proclaimed by the President of the United States, at St. Louis County, in the State of Missouri, and within the Eastern District of Missouri,

JOSEPH W. EISENBERG,

with reason to believe that his act might injure, interfere with and ob-

* Sitting by designation.

struct the United States in preparing for and carrying on defense activities, did willfully attempt to injure and destroy by fire, war premises and war material, as defined by Section 2151, Title 18, United States Code, to wit: the United States Army Reserve Officers Training Corps facility at Washington University, St. Louis County, Missouri, and articles contained therein, intended for the use of the United States in connection with defense activities.

In violation of Section 2153(a), Title 18, United States Code.

At the trial, the evidence as to the extent of the defendant's participation was in sharp conflict. Government witness Ronald Hildebrand, a professional photographer, retained by counsel for the University, testified that he observed two individuals, one black and one white, throw flaming objects at the Air Force building, but that he didn't see any of the objects reach the building. He testified further that he later took a picture of the two individuals, which was introduced in evidence. F.B.I. agents testified that in an interview shortly after the incidents, the defendant identified himself as the white person in the photograph. It was not contested that the black individual was Napoleon Bland. Another government witness, George Walker, testified he saw a black person and a white person take burning material from a fire nearby, run toward the Army building, and throw the burning material at it.

In his own testimony, the defendant reiterated his prior statements to the F.B.I. to the effect that he had circulated throughout the area during the disturbances and had confined his participation to attempting to persuade a girl to leave one of the burning buildings.

The Army and Air Force buildings were owned by Washington University and leased to the Army and Air Force. They were used to store equipment and in connection with the administration of the two ROTC programs.

The jury returned a verdict of guilty as to Count One of the indictment (the Air Force building) and not guilty as to Count Two (the Army building).

Defendant alleges numerous grounds as a basis to reverse the conviction. The court preliminarily notes that defendant's challenges to the constitutionality of 18 U.S.C.A. § 2153(a) and as to the existence of a national emergency are foreclosed by this court's decision in United States v. Achtenberg, 459 F.2d 91 [8th Cir. 1972], cert. denied, 409 U.S. 932, 93 S.Ct. 229, 34 L.Ed.2d 187 [U.S.1972]. Defendant argues that he was deprived of due process of law by his alleged arbitrary transfer from State law enforcement officials to federal authorities without a judicial hearing. Defendant admits that this court has decided this issue contrary to defendant in Caton v. United States, 407 F.2d 367 [8th Cir. 1969], but asserts that this court should re-examine its position. The court is of the opinion that Caton v. United States, *supra*, was correctly decided and finds no error in this regard. The sufficiency of the evidence is also attacked by the defendant. The testimony of Hildebrand and the picture he took were sufficient by themselves to sustain the conviction and the court finds no merit in this contention of the defendant. The remaining grounds will be discussed individually.

## DISCOVERY AND FAVORABLE EVIDENCE

Defendant alleges that the failure of the government to provide the defendant with sufficient grand jury testimony and other favorable evidence should dictate a reversal. In this connection, defendant cites United States v. Achtenberg, *supra*, as controlling. This court is not persuaded that United States v. Achtenberg should be controlling, in that *Achtenberg* does not address itself to the effect of 18 U.S.C.A. § 3500, as amended. The court might note that this case is unusual in that it was the last in a series of prosecutions. Counsel for defendant has indicated that he had

the benefit of much of the testimony and evidence that had developed from the other trials. A serious question is thus presented whether defendant could demonstrate any need for the requested production, in light of these circumstances. However, the court will address itself to the merits of defendant's alleged errors.

■ In this area of the law, two cases and one statute are of prime importance. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 [1963], holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, *supra*, is silent as to when such request may be properly made. In Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 [1966], at the conclusion of the direct examination of each of the witnesses, the defendants had moved for production for the defendants' examination of the grand jury testimony of four government witnesses. In reversing the denial by the trial court of the motion for production, the Supreme Court held that the prior statements should be made available where the defendants have demonstrated a particularized need for them. Examples of particularized need were given as to impeach a witness, refresh his recollection or to test his credibility. 18 U.S.C.A. § 3500, as amended, provides that no statement or report made by a government witness or prospective witness shall be made available until the witness has testified on direct examination in the trial of the case. The 1970 amendment to that statute extended its scope to statements made during grand jury proceedings.

■ Reading these cases and the statute together, it is the court's conclusion that the rule must be that the defendant may not obtain any favorable statements made during a grand jury proceeding by a government witness or prospective government witness until the witness has testified at trial.[1] Statements favorable to the defendant made other than during a grand jury proceeding by a government witness or prospective government witness are similarly not available until the witness has testified at trial.[2] As to statements favorable to the defendant by other than a government witness or prospective government witness, they are available for pre-trial discovery upon a showing of particularized need if the statement was made during a grand jury proceeding and upon request if made other than during a grand jury proceeding.[3] These rules are applicable, absent unusual circumstances.

Herein, two types of statements were sought by the defendant, (1) statements by those witnesses who later testified at trial and (2) those statements made to the government in its investigation of potential witnesses, by persons not called to testify at trial. The defendant's

1. This rule has been discussed at length in United States v. Harflinger, 436 F.2d 928 [8th Cir. 1970]; United States v. Davis, 410 F.2d 959 [8th Cir. 1969]; and Hanger v. United States, 398 F.2d 91 [8th Cir. 1968].

2. *See* United States v. Montos, 421 F.2d 215 [5th Cir. 1970]; United States v. Harris, 458 F.2d 670 [5th Cir. 1972]; United States v. Wilkerson, 456 F.2d 57 [6th Cir. 1972]; Sendejas v. United States, 428 F.2d 1040 [9th Cir. 1970]; United States v. Washabaugh, 442 F.2d 1127 [9th Cir. 1971]; United States v. Brown, 425 F.2d 1172 [9th Cir. 1970]. But see United States v. Bishton, 463 F.2d 887 [D.C.Cir. 1972]; United States v. Ahmad, 53 F.R.D. 186 [M.D.Pa. 1971]; United States v. Eley, 335 F. Supp. 353 [N.D.Ga.1972]; United States v. Gleason, 265 F.Supp. 880 [S.D. N.Y.1967].

3. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 [1963], Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 [1966], United States v. Ahmad, 53 F.R.D. 186 [M.D. Pa.1971].

theory as to the latter statements is that they constituted "negative evidence."

From the rules enunciated above, it is clear that the first category of statements was not available for pre-trial discovery and the trial court was correct in denying such production. The second category of statements will require a discussion of the concept of "negative evidence." The failure of a witness to see or hear a particular event may have weight as to the non-occurrence of the event. 4 Jones on Evidence § 986. However, the burden is upon the party who asserts the negative evidence to prove that the witness was in a position to have observed the questioned event had it occurred as alleged. 1 Jones on Evidence § 208.

Here, there were at least 1000 persons present in the general area encompassed by the demonstration. Not all those persons would likely have been in the proper position at the appropriate times to have witnessed the actions of the defendant as charged herein. If they were not in such a position, then their statements would be neither inculpatory nor exculpatory and not within Brady v. Maryland, *supra*. Riley v. Sigler, 437 F.2d 258 [8th Cir. 1971]. The government's duty under Brady v. Maryland, *supra*, is to disclose those statements made by persons who were in a position to have seen the events had they occurred as alleged. The government, in response to the discovery motion, stated there were no favorable statements. When such a response is given, then if the defendant before, during or after trial can show that a particular witness of whom the government had a statement was in a position at the appropriate time to have witnessed the alleged acts, the government has violated the rule of Brady v. Maryland. In the case at bar, the defendant did not prove to the trial court that such was the case. Thus, the trial court's decision as to pre-trial discovery was correct and should be affirmed.

## EVIDENCE OF DAMAGE

At the trial, the government's evidence included various pictures showing actual damage to numerous items of government property and buildings. Defendant objected to these exhibits, asserting that their admittance would not be proper because defendant was being tried only for attempt, not actual destruction. There was also testimony as to damage by certain of the government's witnesses. Defendant now reasserts this on appeal, and states that the admission of the evidence of actual damage was highly prejudicial to the defendant.

The admission of evidence of the type here challenged is properly within the discretion of the trial court, and this court will not reverse, except for an abuse of that discretion. Johnson v. United States, 362 F.2d 43 [8th Cir. 1966]. As the trial court ruled, the evidence was admissible to show the surrounding circumstances contemporaneous with the event at issue. 1 Jones on Evidence § 156. The case of United States v. Konovsky, 202 F.2d 721 [7th Cir. 1953], cited by defendant, is not persuasive, since that court stated it did not reach the question as to whether the admission of evidence of actual damage would be sufficient to alone require reversal. The court finds no abuse of discretion in the admission of evidence of actual damage.

## MULTIPLE COUNTS

The indictment charged the defendant in two counts. The counts charged the same offenses, with the only difference being that Count One related to the Air Force Building and Count Two related to the Army Building.

Defendant argues for the government to split the offense into separate segments by charging separately as to each building approaches double jeopardy and cruel and unusual punishment. The court is not convinced that the offense

has been split and that the buildings were not properly the subject of separate charges.

 Where successive impulses are present, the individual may be properly charged with multiple offenses. Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 [1932]. Had defendant thrown a stick of dynamite between the two buildings and attempted to blow up both, then only one offense should be charged. Herein, defendant was alleged to have committed acts as to one building and then later have run to another building and committed similar acts. Thus, multiple impulses occurred and multiple offenses were properly charged.

## ALLEGED ERRORS IN JURY INSTRUCTIONS

The defendant submitted several requested instructions which were denied by the court and excepted to certain instructions that were given. Only the specific instructions or exceptions that follow are worthy of detailed comment.

 Defendant requested an instruction on a lesser included offense as to 18 U.S.C.A. § 1361, malicious mischief involving willful injury to property of the United States. Instructions as to lesser-included offenses are required in certain circumstances. Sansone v. United States, 380 U.S. 343, 85 S.Ct. 1004, 13 L.Ed.2d 882 [1965]. However, the instruction is not proper unless it is impossible to commit the greater without first committing the lesser, for otherwise the lesser is not properly a lesser offense to greater. Olais-Castro v. United States, 416 F.2d 1155 [9th Cir. 1969]. Here, the instruction was not required because the greater was an attempt charge, while the lesser required the completed act. Thus, the greater could be committed by proof of less than was required for the lesser, the completed act not being essential to the proof of the greater.

Defendant also asserts as error the instructions of the court regarding the elements of the crime required by the government to be proven.

In United States v. Achtenberg, *supra*, we had occasion to comment on this problem at some length. In *Achtenberg*, we held that the trial court's instructions to the effect that the crime required only two elements without adequate explanation required reversal.

 In the case at bar, the trial court also characterized the offense as consisting of two elements by combining all of the elements of the offense into two paragraphs, but, as was not done in *Achtenberg*, the court carefully limited the offense to acts of the defendant. The trial court also instructed that presence at the scene was not sufficient and that the jury must find that the defendant willfully attempted with the required intent to injure and destroy. This court is convinced that the explanation by the court of the elements of the offense was sufficient to negate any error contained in characterizing the offense as consisting of two elements. This is not a case where the court left out an essential element of a crime in its instructions, but where the court joined one or more elements together in the same sentence or paragraph. It does not appear to this court that the jury was equally subject to being misled as in *Achtenberg*.

## CONCLUSION

After detailed review of the entire record of this case, the court finds that the defendant's guilt was founded upon substantial evidence in a trial free of prejudicial error.

The judgment of conviction is affirmed.