IN THE CASE OF


UNITED STATES, Appellee

v.

Neftali RIVERANIEVES, Staff Sergeant
U.S. Army, Appellant

No. 00-0516

Crim. App. No. 9701655

United States Court of Appeals for the Armed Forces

Argued December 6, 2000

Decided April 18, 2001

SULLIVAN, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., GIERKE, EFFRON, and BAKER, JJ., joined.

Counsel

For Appellant:  Major Mary M. McCord (argued); Lieutenant Colonel David A.
    Mayfield (on brief); Colonel Adele H. Odegard, Major Jonathan F. Potter,
    and Major Kirsten V. C. Brunson.


For Appellee:  Captain Daniel G. Brookhart (argued); Colonel David L. Hayden
    and Lieutenant Colonel Edith M. Rob (on brief); Major Mary E. Braisted.




Military Judge: James J. Smith


THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.

Judge SULLIVAN delivered the opinion of the Court.

During August and October of 1997, appellant was tried by a special court-martial composed of officer and enlisted members at Fort Bragg, North Carolina. Contrary to his pleas, he was found guilty of wrongfully using cocaine between May 30 and June 30, 1997, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge and reduction to the grade of private. The convening authority approved this sentence on April 2, 1998, and the Court of Criminal Appeals affirmed in an unpublished opinion on May 18, 1999.

On September 5, 2000, this Court granted review on the following issue:

> WHETHER THE MILITARY JUDGE'S ERRORS IN
> FAILING TO GIVE A CURATIVE INSTRUCTION
> FOLLOWING TRIAL COUNSEL'S MISSTATEMENT OF
> THE EVIDENCE AND COMPOUNDING THE ERROR
> PREJUDICED APPELLANT'S RIGHT TO A FAIR
> TRIAL.

We hold that trial counsel's erroneous argument on the evidence presented in this case and the military judge's affirmation of that argument materially prejudiced appellant's substantial rights. Article 59(a), UCMJ, 10 USC § 859(a).

Appellant was charged with wrongfully using cocaine "at or near Fort Bragg, North Carolina, between on or about 30 May 1997,

and on or about 30 June 1997."  The prosecution presented its standard urinalysis case based on a positive urinalysis report, expert testimony explaining it, and chain-of-custody evidence. See United States v. Murphy, 23 MJ 310 (CMA 1987).  The defense's theory was that appellant's urine sample was tampered with or adulterated after it was seized from him.

As part of its case in chief, the prosecution called Major Brian J. Lukey, U.S. Army, a board-certified toxicologist and officer-in-charge of Tripler Forensic Toxicology Drug Testing Laboratory in Hawaii.  He testified on direct examination as follows:

> Q.  Could you explain for the panel members how the use of cocaine is detected in the human body?
>
> A.  Yes.  When cocaine enters the body, whether you inhale it, smoke it, you can snort it, intravenously administer it or even ingest it, it will enter into the blood system.  The blood will move it through the body to the brain, where it exerts its pharmacological effect, the high; but also, the body recognizes any substance, like cocaine, as a foreign substance and it tries to get rid of it. One of the ways it gets rid of it is it tries to make it more water-soluble, so it would attach a chemical moiety to it or break it into components that we call "metabolites."  And, it's the metabolites that go into the urine and eliminate it from the body.  And one particular metabolite - it's called "Benzoylecgonine" or "BZE" - is the one that we particularly look at for cocaine abuse.
>
> Q.  Now, in your experience, can the metabolite referred to as BZE be produced

       in any other - from any other substance,
       but cocaine?

       A.  No.

       Q.  Can the human body naturally make and
       produce BZE?

       A.  It cannot.

       Q.  <u>If the human body consumes cocaine,</u>
       <u>can that body then produce the metabolite</u>
       <u>BZE</u>?

       A.  <u>Yes</u>.

       Q.  <u>So is it true that a human body which</u>
       <u>produces urine that contains the</u>
       <u>metabolite BZE has consumed or ingested</u>
       <u>somehow cocaine</u>?

       A.  <u>Yes</u>.

       Q.  What types of tests are done on urine
       to detect the metabolite BZE?

       A.  We actually do two different tests at
       our laboratory.  We do a first test.  It's
       called a "Screening Test," which is
       immunological based.  It's called "Kinetic
       Interaction of Microparticles in
       Solution." . . .

(Emphasis added.)  He further stated:

       Q.  You mentioned a fingerprint.  Is that
       a fingerprint for the metabolite BZE?

       A.  That's correct.

       Q.  Is there any way for the machine to
       mistake the BZE fingerprint with any other
       metabolite fingerprint?

       A.  No.

       Q.  <u>So if your machine registers a</u>
       <u>fingerprint for BZE, then there was BZE in</u>
       <u>the specimen</u>?

       A.  <u>That's correct</u>.

4

> Q.   Can you state for the panel what the
> cutoff level is, established by DoD, for
> the GC/MS test?
>
> A.   Yes, it's 100 nanograms per
> milliliter.

(Emphasis added.)

On cross-examination, Major Lukey answered additional questions from defense counsel as follows:

> Q.   Okay, sir.  And, a question about the
> BZE produced by cocaine - and I believe
> there was a prior witness who briefly
> discussed this.  You said that the body
> processes that out.  It comes out through
> the urine.  It's detected there.
>
> A.   Correct.
>
> Q.   If - if there were cocaine, basically,
> dumped into urine and shipped to your lab,
> what happens there?
>
> A.   It all depends upon the Ph of the
> urine itself.  The more basic the urine,
> the cocaine can actually go and form BZE
> itself.  So, you actually find BZE and,
> actually, in this case, the urine was
> fairly basic.  It was - actually, I think
> we - I don't have my chain - I had it on
> the other chain of custody form - but, I
> think it was 7 something, which, if
> cocaine was added to that urine, it could
> form BZE.
>
> Q.   Okay.  So, that is possible, unlike
> with say marijuana, whereas you can't - it
> couldn't be dropped into a urine specimen
> and then it would just - it wouldn't come
> up with anything?
>
> A.   That's correct.

(Emphasis added.)

Trial counsel, in his rebuttal argument on findings, stated:

> Mr. President, members of the panel, the defense was right about one thing, testing procedures don't prove the accused's guilt.  It was the accused's use of cocaine that proves him guilty.  It's the evidence that proves him guilty.  It's the fact that he provided a urine sample.  The urine sample was tested.  The testing was positive.  That proves him guilty. . . .
>
> *   *   *
>
> He had the control where he was in his own room, where he could control everything without anyone coming in and he had the latrine, a mere 10 to 15 feet away.  The bottom line is the sample taken from the accused was properly taken.  It was his urine.  It showed BZE.  <u>BZE only appears when you've been using cocaine</u>.  These simple facts --
>
> ADC:  <u>Your Honor, that's not a fact</u>.
>
> MJ:  <u>That was the testimony of the expert. Please be seated</u>.
>
> (The assistant defense counsel did as directed.)

(Emphasis added.)

___  ___  ___

RCM 919, Manual for Courts-Martial, United States (1995 ed.), stated:

> **Rule 919.  Argument by counsel on findings**
>
> (a)  <u>In general</u>.  After the closing of evidence, trial counsel shall be permitted to open the argument.  The defense counsel shall be permitted to reply.  Trial

6

> counsel shall then be permitted to reply in rebuttal.
>
> (b) <u>Contents</u>. <u>Arguments may properly include reasonable comment on the evidence in the case, including inferences to be drawn therefrom, in support of a party's theory of the case</u>.

(Emphasis added). The Court of Criminal Appeals held that trial counsel's argument that the evidence presented in this case showed "BZE only appears when you've been using cocaine" was a misstatement. Unpub. op. at 2. We agree with the lower appellate court's conclusion.

RCM 919(c) further provides:

> (c) <u>Waiver of objection to improper argument</u>. Failure to object to improper argument before the military judge begins to instruct the members on findings shall constitute waiver of the objection.
>
> **Discussion**
>
> If an objection that an argument is improper is sustained, <u>the military judge should immediately instruct the members that the argument was improper and that they must disregard it</u>. In extraordinary cases improper argument may require a mistrial. See RCM 915. The military judge should be alert to improper argument and take appropriate action when necessary.

Here, the defense immediately objected to the prosecutor's misstatement of the evidence in his closing argument. Instead of sustaining that objection and instructing the members to disregard the prosecutor's misstatement, the military judge

7

agreed with trial counsel's reading of the record and communicated this belief to the members.

The remaining question before us is whether appellant was prejudiced by trial counsel's erroneous argument and the military judge's compounding of that error. In United States v. Iglesias, 915 F.2d 1524, 1529 (11th Cir. 1990), the Eleventh Circuit held that an erroneous-misstatement-of-evidence argument by trial counsel may be cured by an immediate instruction from the trial judge that the jury members, not counsel, must decide what evidence was admitted in a case. However, in United States v. Achtenberg, 459 F.2d 91, 98 (8th Cir.), cert. denied, 409 U.S. 932 (1972), the Eighth Circuit, in different circumstances, found prejudice despite a curative instruction that the members of the jury "alone" were "judges of what the evidence" was. The particular circumstances of each case are controlling.

In appellant's case, there was no immediate curative instruction given by the trial judge as to the prosecutor's erroneous argument, (R. 220) nor a timely one specifically repudiating his asserted view of the evidence in this case. (R. 226). Moreover, this was a urinalysis case and the misstatement pertained to a critical issue and its resolution based on scientific principles. Cf. United States v. Mack, 33 MJ 251 (CMA 1991) (urinalysis conviction set aside because of inconsistent scientific proof); United States v. Murphy, supra at 312 (urinalysis conviction set aside for inadequate scientific

proof).  Finally, the judge's comments effectively blunted appellant's previously noted defense that his urine sample had been purposefully tampered with after he submitted it to military authorities.  See United States v. Lewis, 51 MJ 376 (1999).  We find material prejudice in these circumstances.  Article 59(a).

The decision of the United States Army Court of Criminal Appeals is reversed and the findings of guilty and the sentence are set aside.  The record of trial is returned to the Judge Advocate General of the Army.  A rehearing may be ordered.